McAdam, C. J.
—The bonds belonged to the Chelsea, a corporation of which the defendant was trustee and had been secretary. The defendant had no proprietary interest in them. He had received authority from the Chelsea to sell the bonds so as to average that corporation ninety per cent of their face value; anything he could get over ninety per cent was to belong to him for his services. The defendant never sold the bonds, and, as a necessary consequence, never received his ten per cent commission. The bonds were delivered to Hall & Garrison under these circumstances. They were contractors and had done work on the apartment house owned by the Chelsea corporation, for which it owed them a sum of money exceeding $28,000. Mr. Adams, representing Hall & Garrison, desired payment of their demand, and made repeated applications to the defendant, as the representative of the Chelsea corporation, to see if he could not hurry up and get money to pay them. The defendant told Adams that he was doing the best he could with the bonds, and that Hall & Garrison had nothing to do but wait until he could sell them and pay the Chelsea the money, and then their bill, for which they held architect’s certificates, would be paid. Negotiations were had between Hall & Garrison on the one hand, and the defendant. representing the Chelsea, on the other, which finally resulted in an agreement whereby Hall & Garrison took the bonds at eighty cents on the dollar in part payment of their bill, for which they held architect’s certificates, they giving back to the defendant the agreement before referred to, by which he had the privilege of re-purchasing the bonds at any time within one year at eighty cents on the dollar. Hall & Garrison, in February, 1885, received from the defendant, as the representative of the Chelsea, twenty more of its bonds at $500 each, aggregating at par value $10,000, and afterwards received fifteen more of its bonds at $500 each, aggregating at par value $7,500, making in all $28,000 in bonds at their par value. They were all given for work done by Hall & Garrison on the Chelsea building, and the balance due them at the time exceeded the $28,000 received.
Some question was raised as to the right of Hall & Garrison to receive their entire demand, owing to the want of architect’s certificates, that the money had been fully earned, but this circumstance is of but little consequence, as the architect had been instructed by the Chelsea corporation not to give the required certificates, and the Chelsea corporation-the party in interest, not having insisted on this formality as a condition precedent to payment, and having fully recognized the right of Hall & Garrison to receive the bonds in payment of their claim for work done, the defendant *661 cannot raise that question now. The Chelsea might have raised it—he cannot.
The Chelsea subsequently ratified, the payment of the bill by bonds by redeeming them and paying Hall & Garrison their full par value.
Thus, by the transaction as finally consummated between Hall & Garrison and the Chelsea corporation, the principals to the transaction, all claims for or on account of the delivery of the bonds to Hall & Garrison were settled, adjusted and satisfied without any avowed dissent on the part of the defendant. The defendant was present when the bonds were redeemed and paid, and made no objection and asserted no claim either to his ten per cent commission or to the twenty per cent difference between the par value and the eighty cents on the dollar, at which the twenty-five bonds were to be returned to him, nor did he make known to Hall & Garrison that he had any personal interest whatever in the bonds in any form or to any extent.
The contract made by Hall & Garrison to return to the defendant at eighty cents on the dollar the twenty-five bonds first delivered, though in writing, was not under seal, and the Chelsea corporation, the owner of the bonds and the avowed principal, for whose best interest the defendant was acting, became entitled to claim the benefit of the contract, and they ultimately received the full benefit of it by receiving credit for the full face value of the bonds. The defendant, under the circumstances, cannot set up any individual agreement whereby he secured to himself as against his principal any private or personal advantage in the transaction. He did not sell the bonds and did not earn his ten per cent by delivering them over to creditors of his principal in payment of a debt his principal owed and was bound to pay. If, however, he has any claim for the ten per cent it is, in view of the facts, against the principal and not against Hall & Garrison who, according to the finding of the jury, supposed and acted on the belief that in the various transactions the defendant represented the Chelsea corporation, and was acting solely in its interest and for its benefit, without any view to private gain, and the evidence sufficiently warrants this finding. HaÉ & Garrison have therefore substantially and in legal form and effect satisfied their contract with the defendant. The paper writing signed by Hall & Garrison giving the defendant the option of repurchasing the twenty-five bonds at eighty cents on the dollar did not contain the whole agreement in respect thereto. It was only one part of the agreement, and did not prevent Hall & Garrison from proving the existence of an oral agreement made in connection *662 with the written instrument. Julliard v. Chaffee, 92 N. Y., 529.
The rule prohibiting the reception of paroi evidence, varying or modifying a written agreement, does not apply where the original contract was verbal and entire, and part only was reduced to writing; nor does it apply to a collateral undertaking. These facts are always open to inquiry and may be proved by parol. Chapin v. Dobson, 78 N. Y., 74.
The agreement to allow the defendant to re-purchase the bonds at eighty cents on the dollar, was not an entire contract in the full sense of that term. It was collateral to and part of another contract by which the bonds were to be applied on account of the debt owing by the Chelsea corporation to Hall & Garrison. If Hall & Garrison had returned the bonds to the defendant, at 80 cents on the dollar, they would have credited the Chelsea corporation, the defendant’s principal, at that rate, and thus the equity asserted by the defendant would, if allowed, take twenty cents on the dollar from the treasury of his principal, and convert this amount to his own individual use. This claim is antagonistic to his trust, and cannot be asserted by him to the prejudice of his principal.
The delivery of the bonds to Hall & Garrison, on account of their demand, was made under the defendant’s general powers as an executive officer of the Chelsea, and not under his special authority to sell the bonds and return to it ninety cents on the dollar of their par value. This special authority remains unexecuted. The delivery by the defendant was, therefore, a delivery by the Chelsea. The unsealed contract, permitting a re-purchase from Hall & Garrison, made in the individual name of the defendant, was, in legal effect, a contract to re-sell to the corporation for whom he acted throughout the entire transaction, for no principle is better settled or founded upon a sounder basis of position, law or fixed ethics than that which declares that whoever undertakes to act for another, in any matter, shall not, in the same matter, act for himself, and this without respect to the fact whether the party has or has not made a profit by the act. Equity disallows the measure upon general principles, without reference to advantage or unfairness. See cases collated’ in 37 English Reports, Cook’s Notes, p. 188. The owner of the bonds (the Chelsea) has been fully paid for them in a manner satisfactory to it, and the defendant, as a mere agent or trustee in the transaction, cannot be allowed to base an individual claim for damages on the transaction because the manner of settlement does not meet his approval. If the Chelsea does not find fault, he cannot. If it sees fit to find fault, it must do so in some *663 proceeding to which it is a party and in which its rights may be presented, enforced and adjudicated. Upon the entire case the verdict seems warranted by the proofs, and, as we have discovered no legal error in the record, the judgment entered upon the verdict must be affirmed, with costs.
Ehrkich, J., concurs.